**Petition for Writ of Mandamus Conditionally Granted in Part and Denied in Part and Opinion filed December 12, 2017.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00508-CV

### IN RE HOWARD SHULMAN, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**234th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-03005**

## O P I N I O N

In this original proceeding, relator Howard Shulman seeks mandamus relief from orders abating the underlying case and compelling certain discovery. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex. R. App. P. 52.

Real party in interest Georgia Foulard engaged attorney Shulman to provide tax planning advice regarding certain property transfers benefitting Georgia as a result of a divorce settlement with her husband, Michael Foulard. Georgia later sued Shulman alleging negligence, breach of fiduciary duty, and other claims. Though she seeks several types of damages, Georgia claims principally that Shulman's alleged wrongful conduct exposed her to approximately $1.6 million in potential federal tax liability. After Shulman moved for summary judgment, Georgia filed a motion to abate all of her claims until potentially August 2021, when she contends the limitations period for the Internal Revenue Service (the "IRS") to assess taxes will expire.

The trial court, Honorable Wesley R. Ward, presiding judge of the 234th District Court of Harris County, abated the case "until August 15, 2021 or until the IRS assesses the tax liability at issue in the lawsuit, whichever is sooner." Before abating the case, the trial court signed a separate order compelling Shulman to produce documents Shulman contends are subject to the attorney-client privilege. Shulman requests mandamus relief as to both orders.

Regarding the abatement order, we hold that, under the present circumstances, abating the case for the time period at issue is an abuse of discretion and effectively vitiates Shulman's ability to present a claim or defense. Because relator lacks an adequate remedy by ordinary appeal, we conditionally grant the petition for writ of mandamus as to the abatement order. We deny the petition for writ of mandamus as to the order to produce documents because the trial court has not finally refused Shulman's motion to reconsider and request to review the documents *in camera*.

2

## FACTUAL AND PROCEDURAL BACKGROUND

To resolve a divorce proceeding, Georgia and Michael signed a binding Mediated Settlement Agreement ("MSA").  Under the MSA, an offshore company known as Gulfstream Overseas (Bahamas) Ltd. ("GOB"), owned jointly by Georgia and Michael, was to transfer a house and $1.645 million cash to a Bahamian entity established by Georgia.  The MSA did not detail the means or method of the transfer, but provided that, "Mike shall cause GOB to convey the assets to [Georgia's] Bahamian entity and account by any method he shall elect which is calculated to allow a transfer that does not create a taxable event for Georgia or the Bahamian entity except that Georgia shall pay any 'repat' tax on the assets awarded to her herein if Georgia takes any action which creates a taxable 'repat' tax event for these assets awarded to her herein."  The MSA further stated that "should the US or Bahamian tax authorities deem the receipt of these assets a taxable event, Georgia shall be responsible for 100% of same and shall indemnify, defend and hold Mike and GOB and his/its property harmless from any liability thereon."  The MSA divided marital property.  Any disputes regarding the MSA's interpretation were to be resolved by arbitration.  Georgia and Michael signed the MSA on October 30, 2013.

After signing the MSA, Georgia hired Shulman on November 19, 2013 to provide tax planning advice in connection with the property transfer from GOB.  In January 2014, Shulman concluded that of multiple methods to effect the transfer, a stock redemption transaction "seemed the most logical" way to characterize the transfer for federal income tax purposes.  Shulman believed that Georgia may be

3

forced to recognize a significant amount of taxable income as a result of signing the MSA, unless the MSA was amended.

Georgia, however, understood the MSA to contemplate the property transfer by means that would not result in a taxable event to her. Georgia did not accept or follow Shulman's advice or recommendations. Georgia hired new tax counsel, Marc Grossberg, who advised Georgia that to avoid creating a taxable event for her, GOB should transfer the property to Michael and then Michael should transfer the property to Georgia.

In February 2014, the trial court signed an Agreed Final Decree of Divorce, which incorporated the MSA. Subsequently, both Georgia and Michael filed counter-proceedings for enforcement of the MSA. Michael moved to refer the matter to arbitration, which the trial court granted. The principal issue at arbitration concerned the means by which the house and cash would be transferred. According to Georgia, Shulman appeared at the arbitration as part of Michael's legal team. Georgia also contends that Shulman, acting for GOB, hired a tax expert, who testified adversely to Georgia on the issue for which Georgia had engaged Shulman. The arbitrator ruled that Georgia was to sign a stock redemption agreement to transfer the property from GOB to Georgia's Bahamian entity.

The trial court signed findings of fact and conclusions of law based on the arbitrator's award and ordered Georgia to sign the stock redemption agreement, which she did under protest on January 7, 2015. Georgia filed an income tax return for the 2014 tax year, in which she took the position that she does not owe any tax on the property transfer under the MSA. As of the date of this opinion, the IRS has

4

not assessed any tax or sent a deficiency notice to Georgia related to the property transfer.

In 2016, Georgia filed the present lawsuit against Shulman, asserting claims for negligence (legal malpractice), breach of fiduciary duty, common law fraud, statutory fraud, and tortious interference with contract. All causes of action are based on Georgia's allegations that Shulman (1) provided negligent tax planning advice, and (2) acted against Georgia's interest by advising Michael and GOB on ways to mitigate Michael's and GOB's tax liability from the property transfer, thus "undo[ing]" the tax benefit to which Georgia believed the MSA entitled her.

As a result of Shulman's conduct, Georgia maintains, she is potentially exposed to federal tax liability of approximately $1.6 million. Georgia also seeks legal, professional, and expert fees and expenses in excess of $200,000, disgorgement of attorney's fees, exemplary damages, costs, and interest.

Georgia served Shulman with requests for production of documents related to Shulman's previous representation of Michael, GOB, and other entities. In response, Shulman asserted the attorney-client privilege. Georgia filed a motion to compel production.

In the meantime, Shulman filed a traditional and no-evidence motion for summary judgment, seeking judgment as a matter of law based on collateral estoppel, the absence of damages, the absence of causation, and other reasons. Two days later, Georgia moved to abate her lawsuit until either the IRS had assessed taxes

on the property transfer or until limitations barred it from doing so on August 15, 2021.[1]

The trial court heard the motion to abate and the motion to compel, and signed an order compelling Shulman to produce responsive documents within seven days. Shulman filed an Emergency Motion for Reconsideration of the Court's Order Compelling Production and Alternative Request for *In Camera* Inspection. At a hearing on the motion for reconsideration, Shulman tendered the documents in question for *in camera* review. The trial court declined to review the documents at that time because Shulman had not shown that Michael wanted to invoke his attorney-client privilege. The trial court instructed Shulman's counsel to determine whether Michael wanted to invoke the privilege. The trial court also signed an order abating the case "until August 15, 2021 or until the IRS assesses the tax liability at issue in the lawsuit, whichever is sooner." When the trial court signed the abatement order, Shulman's summary judgment motion remained pending.

## MANDAMUS STANDARD

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so

---

[1] According to Georgia, August 15, 2021, is the date on which limitations will expire for the IRS to assess taxes on the property transfer at issue. *See* 26 U.S.C. § 6501(a), (e)(1)(A). Resolving the present mandamus proceeding does not require us to decide when limitations will expire, and we express no opinion on the issue.

6

arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). A trial court does not have the discretion to make an erroneous legal conclusion even in an unsettled area of law. *See Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex. 1996). We review the trial court's application of the law de novo. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

An abatement order may be reviewed on mandamus when the abatement is indefinite in duration[2] or it effectively vitiates a party's ability to present a claim or defense.[3]

Whether an appellate remedy is adequate so as to preclude mandamus review depends heavily on the circumstances presented. *Prudential*, 148 S.W.3d at 137.

---

[2] *See In re Gore*, 251 S.W.3d 696, 699 (Tex. App.—San Antonio 2007, orig. proceeding); *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 469, 471 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *In re Sims*, 88 S.W.3d 297, 306 (Tex. App.—San Antonio 2002, orig. proceeding); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 332 (Tex. App.—San Antonio 1995, orig. proceeding); *see also In re Immobiliere Jeuness Establissement*, 422 S.W.3d 909, 914 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding).

[3] *See In re Messervey Trust*, No. 04-00-00700-CV, 2001 WL 55642, at *4 (Tex. App.—San Antonio Jan. 24, 2001, orig. proceeding) (mem. op., not designated for publication); *In re R.R.*, 26 S.W.3d 569, 573–74 (Tex. App.—Dallas 2000, orig. proceeding); *Underwood v. Bridewell*, 931 S.W.2d 645, 646–47 (Tex. App.—Waco 1996, orig. proceeding); *Gebhardt v. Gallardo*, 891 S.W.2d 327, 332–33 (Tex. App.—San Antonio 1995, orig. proceeding); *see also In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (mandamus available to correct orders that severely compromise party's ability to present a viable claim or effectively deny the ability to develop the merits of one's case).

Mandamus review of interlocutory rulings may be "essential to preserve important substantive and procedural rights . . . , [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id*. at 136. "When a trial court erroneously sustains a plea in abatement, mandamus is appropriate if the plaintiff is 'effectively denied any other method of challenging the court's action for an indefinite period of time during which the cause of action remains in a suspended state.'" *In re Adan*, No. 14-11-00382-CV, 2011 WL 3208009, at *4 (Tex. App.—Houston [14th Dist.] July 28, 2011, orig. proceeding) (mem. op.) (concluding that relator had no adequate remedy by appeal for erroneous abatement); *In re Discovery Operating, Inc*., 216 S.W.3d 898, 904 (Tex. App.—Eastland 2007, orig. proceeding). When an abatement order vitiates another party's ability to prosecute and present a viable claim or defense, ordinary appeal may not provide an adequate remedy for an abuse of the trial court's discretion. *See Gebhardt*, 891 S.W.2d at 332.

With respect to discovery orders, "[m]andamus is proper when the trial court erroneously orders the disclosure of privileged information because the trial court's error cannot be corrected on appeal." *In re E.I. DuPont de Nemours & Co*., 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam).

# ANALYSIS

## Abatement order

**A.    The abatement order constitutes an abuse of discretion for which Shulman lacks an adequate remedy by ordinary appeal.**

A motion to abate sets forth facts and reasons outside the petition why a case should not proceed or should be dismissed.[4] *See In re Gen. Agents Ins. Co. of Am.*, 254 S.W.3d 670, 676 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). Typically, abatement procedure is invoked by defendants rather than plaintiffs but that is not always so. Here, the plaintiff moved to abate the entire case after engaging in substantial discovery and after the defendant filed dispositive motions.

In her motion to abate, Georgia argued that abatement was necessary because proceeding with her lawsuit against Shulman forces her to take inconsistent positions, thus prejudicing her. On the one hand, to succeed on her tax damage claims against Shulman, Georgia must prove that she has incurred tax liability. On the other hand, the IRS has not assessed tax liability relating to the property transfer, Georgia has not paid any taxes arising from the property transfer, and Georgia has told the IRS she does not owe any taxes relating to the property transfer. Relying on *Murphy v. Campbell*, 964 S.W.2d 265 (Tex. 1997), Georgia argued that in cases like

---

[4] Generally, a motion to abate or plea in abatement based on facts outside of the record must be verified. *See In re Gen. Agents Ins. Co. of Am., Inc.*, 254 S.W.3d 670, 676 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Sparks v. Bolton*, 335 S.W.2d 780, 785 (Tex. Civ. App.—Dallas 1960, no writ). Georgia's motion to abate was not verified. Shulman has not complained about the lack of verification, so we consider any objection regarding the verification requirement waived. *See Sparks*, 335 S.W.2d at 785.

9

the present one, when the claims have accrued and a plaintiff must file suit to avoid limitations, a trial court "should abate the malpractice case pending final resolution of the tax suit." *Id*. at 272. Georgia asserted that her tax liability, if any, may not be known until August 15, 2021.

Shulman contends the abatement order is a clear abuse of discretion for two reasons. First, Shulman disputes that *Murphy*'s reasoning applies. Second, Shulman argues that abating the case until August 2021 is tantamount to an "indefinite" delay and deprives him of his right to resolution of claims and defenses within a reasonable time.

We begin with Shulman's first argument. *Murphy* was an accounting malpractice lawsuit in which the plaintiffs alleged faulty tax advice. *Id*. at 267–68. The IRS sent the taxpayers a deficiency notice, which resulted in a tax court action. *Id*. at 267. The taxpayers eventually settled the tax court suit by paying additional taxes plus interest. *Id*. The taxpayers then sued their accountants in state court for negligent tax advice. *Id*. The trial court granted summary judgment on limitations grounds. *Id*. The question the Supreme Court of Texas considered was whether limitations had expired, which turned on application of the discovery rule. *Id*. at 269–70. Under the circumstances there presented, the court held that the latest date by which the taxpayers should have known that the accountant's advice was flawed was when the taxpayers received the IRS deficiency notice and, based on those facts, limitations had expired. *Id*. at 272.

Arguing alternatively, the *Murphy* plaintiffs contended their suit was filed timely notwithstanding the discovery rule because the limitations period was tolled,

10

relying on *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). Under *Hughes*, "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim is tolled until all appeals on the underlying claim are exhausted." *Id*. at 157. The *Hughes* tolling rule avoids requiring a client to "file a malpractice claim against the lawyer representing him in another case" because mandating such a suit "would necessarily make it virtually impossible for the lawyer to continue his representation." *Murphy*, 964 S.W.2d at 272. Citing *Hughes*, the *Murphy* plaintiffs argued that limitations was tolled during the pendency of the tax court litigation because requiring them to file a malpractice suit against their accountants during the tax court proceeding would compel "inconsistent positions." *Id*. The supreme court rejected their argument, reasoning that (1) the narrow *Hughes* rule did not support tolling in every instance a litigant may be forced to take inconsistent positions, and (2) the *Murphy* plaintiffs "would not have suffered the prejudice the *Hughes* plaintiffs would have suffered by either suing the lawyer who was still representing them and thereby losing his services or allowing limitations to run against their malpractice claim." *Id*. In discussing its result, the *Murphy* court mentioned that the plaintiffs could have avoided taking inconsistent positions "by requesting the court to abate the malpractice case pending resolution of the tax suit," in which instance a court "should abate the malpractice case pending final resolution of the tax suit." *Id*.

Laying this last quote as the cornerstone of her motion to abate, Georgia argues that abating her malpractice claims was necessary to avoid taking inconsistent positions as to her tax liability.

In relying on *Murphy* to abate Georgia's claims, we conclude the trial court did not apply the law correctly to the facts. *See Cerberus Capital*, 164 S.W.3d at 382. First, the quoted statement presupposes the existence of a pending tax suit, which does not exist here. Second, the *Murphy* quote on which Georgia relies was stated in the context of the *Hughes* tolling rule. Unlike *Murphy*, the present mandamus proceeding, in its current posture, does not involve *Hughes* tolling, nor the discovery rule, nor limitations.[5] *Murphy* did not say that abatement is appropriate every time a litigant may be forced to take inconsistent positions; *Murphy* did not address that issue. Finally, because the tax court litigation was the first action filed in *Murphy*, any abatement of the malpractice suit in that case would have been for a much shorter duration than the abatement period ordered here, which may last more than four years. *Murphy* does not support the trial court's abatement order.

As to Shulman's second argument, we agree that the abatement period ordered here is unreasonably long so as to severely compromise Shulman's ability to obtain a ruling on viable claims or defenses that have been timely presented to the court.

Parties in a civil case are entitled to full discovery, to develop their claims and defenses, and to have the case tried, all within a reasonable time. *See Colonial*

---

[5] We express no opinion whether the *Hughes* tolling rule may apply to this dispute in the future.

*Pipeline*, 968 S.W.2d at 941–42 (holding that order abating discovery from all but small group of plaintiffs until that group's claims were resolved unreasonably interfered with defendants' ability to prepare a defense and was abuse of discretion); *In re R.R.*, 26 S.W.3d at 574 (holding blanket order staying discovery on main issue because of related criminal proceeding was abuse of discretion because it vitiated defendant's ability to prepare defense in civil case). Absent authority to the contrary, Shulman has the same right as any other civil litigant to, within a reasonable time, develop his defenses and proceed to trial or resolution. *See Gore*, 251 S.W.3d at 699–700.

According to the record, Georgia and Shulman have completed substantial discovery and Shulman has filed a traditional and no-evidence motion for summary judgment. The trial court did not rule on those motions before signing the abatement order. Generally, a trial court is required to consider and rule upon a motion within a reasonable time. *In re Martinez Ramirez*, 994 S.W.2d 682, 683 (Tex. App.—San Antonio 1998, no pet.) (citing *Barnes v. State*, 832 S.W.2d 424, 426 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding)). "When a motion is properly filed and pending before a trial court, the act of giving consideration to and ruling upon that motion is a ministerial act, and mandamus may issue to compel the trial judge to act." *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, orig. proceeding); *see also Eli Lilly and Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (holding trial court abused its discretion by refusing to render a decision on relator's motion).

13

The order abated the case "until August 15, 2021 or until the IRS assesses the tax liability at issue in the lawsuit, whichever is sooner." Though the order is not by its technical terms indefinite, the abatement's years-long duration and its uncertain termination date cause us to conclude that it was an abuse of discretion. In *Colonial Pipeline*, for example, the fact that the stayed discovery would not be available "for many months or even years" was a significant factor in granting mandamus relief as to an abatement order. *Colonial Pipeline*, 968 S.W.2d at 941–42. In *Messervey*, the court granted mandamus relief regarding an order that abated a civil case for a period of "six months or until the criminal case was concluded, whichever occurred earlier." *Messervey*, 2001 WL 55642, at *2. Recognizing that the abatement was not indefinite, the *Messervey* court nevertheless conditionally granted mandamus to vacate an overbroad abatement order that completely curtailed prosecution of an entire case. *Id*. at *4.

A four-year abatement is an extraordinary length of time to require a party to await resolution of claims and defenses that have been substantially discovered and presented to the court by summary judgment motion. Shulman raised several arguments that he contends entitle him to judgment regardless whether Georgia owes taxes on the property transfer. Shulman has a right to attempt to prove his entitlement to judgment without waiting years for Georgia's tax liability to materialize when the fact of that liability may be irrelevant to the success or failure of Shulman's claims and defenses. Postponing a ruling on Shulman's potentially dispositive motions for as long as four years severely compromises Shulman's right to reach potential resolution within a reasonable time.

14

Moreover, the abatement of Georgia's lawsuit is by no means certain to end on August 15, 2021. For example, if the IRS sends a deficiency notice or institutes a tax suit in July 2021, it is foreseeable the abatement could continue given the rationale underlying Georgia's request for abatement would not have changed. And Georgia would have the right to litigate any tax court proceeding to final judgment and through the appellate process, which could take additional years. In *Gebhardt,* the court held that given the evidence there before the court, it was impossible to determine when the abatement would end and thus indefinitely denied plaintiff the ability to develop her case and a forum for trial. *See Gebhardt*, 891 S.W.2d at 329.

Even when an abatement is not "indefinite," if it completely curtails the prosecution of an entire case and denies another party the right to proceed with full discovery or to resolution within in a reasonable time, the aggrieved party has no adequate remedy by appeal and mandamus may issue. *See In re Baldridge*, No. 04-16-00011-CV, 2016 WL 1128236, at \*4 (Tex. App.—San Antonio Mar. 23, 2016, orig. proceeding) (mem. op.); *Gore*, 251 S.W.3d at 699–700; *see also Adan*, 2011 WL 3208009, at \*4 (no adequate remedy by appeal when party "effectively denied any other method of challenging the court's action for an indefinite period of time during which the cause of action remains in a suspended state"); *Discovery*, 216 S.W.3d at 905. By its nature, abatement of an action not only precludes the trial court from going forward on a case, it prohibits the parties from proceeding in any manner until the case has been reinstated. *See Immobiliere*, 422 S.W.3d at 916–17; *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 527 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding).

15

Georgia also cites *Philips v. Giles*, 620 S.W.2d 750 (Tex. App.—Dallas 1981, no writ), as support for the trial court's abatement order. In *Philips*, the plaintiff alleged that her attorney negligently advised her that a divorce settlement agreement would have no tax consequences. *Id.* at 750. Later, an accountant informed the plaintiff that the agreement in fact had tax implications. *Id.* The plaintiff declared the disputed income on her tax returns and paid the anticipated tax. *Id.* She then sued her attorney, seeking damages for the taxes she believed she owed, though the IRS had not determined whether she owed the taxes. *Id.* The attorney filed a plea in abatement, which the trial court granted. *Id.* at 751. The plaintiff sought mandamus relief. The court of appeals denied the writ, holding that abatement was appropriate because it was unknown whether the plaintiff owed the tax and, consequently, whether her claim had accrued.

We disagree that *Philips*—a case Georgia did not cite to the trial court and whose vitality is at least questionable following *Murphy*—supports abatement in the present case. In *Philips*, there was no summary judgment motion pending and the defendant chose to request abatement. Here, Shulman did not request abatement, but filed a summary judgment motion following substantial discovery. Shulman asserts rights and raises issues not presented in *Philips*.

Georgia raises the reasonable concern that if the case is allowed to proceed, Shulman may very well receive a "windfall" if he obtains a favorable merits judgment now and the IRS subsequently assesses tax liability against Georgia. That result, however, will not follow inexorably from conditionally granting mandamus

16

relief. If Shulman's defensive arguments entitle him to summary judgment even assuming Georgia already owes the taxes, then he is receiving no windfall by having those issues determined sooner rather than later. Once the trial court rules on the dispositive motions, the parties and the court may reassess whether a temporary abatement or other relief may be appropriate at that time to protect the interests of both parties.

For these reasons, we conclude that the abatement order constitutes an abuse of discretion and Shulman lacks adequate remedy by ordinary appeal.

**B.      Subject matter jurisdiction—ripeness of Georgia's claims and damages**

Georgia's motion to abate presupposed that all of her claims and damages have accrued and are ripe. We question that assumption.

Ripeness is a threshold issue that implicates subject matter jurisdiction. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). As a component of subject matter jurisdiction, the ripeness doctrine "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Id*. Ripeness focuses on when an action may be brought so as to avoid the constitutional prohibitions against advisory opinions. *See id*. at 851–52. Under the ripeness doctrine, courts consider whether, at the time a lawsuit is filed, the facts are sufficiently developed "so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id*. at 852. Thus the ripeness analysis inquires whether the case involves "uncertain or contingent future events that may not occur as anticipated or may not occur at all." *Id*. at 852. A case is not ripe when determining whether the plaintiff has a concrete

17

injury depends on contingent or hypothetical facts, or upon events that have not yet occurred. *Id*.

Generally, a tort cause of action must have accrued to give rise to a justiciable controversy. *See Ghidoni v. Skeins*, 510 S.W.3d 707, 713 (Tex. App.—San Antonio 2016, no pet.) (legal malpractice claim not ripe because it had not accrued); *Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1995, no writ); *Laborers' Int'l Union of N. Am. v. Blackwell*, 482 S.W.2d 327, 329 (Tex. Civ. App.—Amarillo 1972, no writ) ("A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded."); *see also Arnold & Itkin, L.L.P. v. Dominguez*, 501 S.W3d 214, 221 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding) (cause of action not ripe if no legal injury has occurred and claim has not accrued). In Texas, accrual of a claim requires a party sustain a "legal injury," that is, an invasion of the plaintiff's legally protected interest such that she may obtain remedy in court. *See Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex. 1967); *Zidell v. Bird*, 692 S.W.2d 550, 555 (Tex. App.—Austin 1985, no writ). In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto, & Friend, LLP*, 404 S.W.3d 75, 89–90 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Hues v. Warren Petroleum Co.*, 814 S.W.2d 526, 529 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

18

Subject matter jurisdiction is never presumed to exist. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–46 (Tex. 1993). In the trial court, Shulman did not raise ripeness arguments in so many words, though he argued extensively that Georgia's alleged damages had not occurred and are too speculative. Shulman did not request dismissal of Georgia's claims for want of subject matter jurisdiction in the trial court, nor did he brief ripeness issues in our court. However, Georgia's causes of action and alleged damages raise ripeness questions, which implicate subject matter jurisdiction. *See Waco*, 22 S.W.3d at 851. Until such time as Georgia sustains a legal injury, her causes of action have not accrued. *Murphy*, 964 S.W.2d at 270; *Atkins*, 417 S.W.2d at 153. For example, insofar as Georgia's negligent tax advice allegations are concerned, whether she has sustained a legal injury as a result of Shulman's alleged faulty tax advice is an open question, given that Georgia did not hire Shulman until after she signed the MSA and she did not take his advice after hiring him. A person suffers legal injury from faulty professional advice when the advice is taken. *See Murphy*, 964 S.W.2d at 270; *Hughes v. Bay Area Montessori House, Inc.*, No. 14-09-00410-CV, 2010 WL 862861, at *2 (Tex. App.—Houston [14th Dist.] Mar. 11, 2010, no pet.) (mem. op.).

Mindful of our obligation to address subject matter jurisdiction even if the parties do not raise it,[6] we set the case for argument and asked the parties to address whether Georgia's alleged causes of action and damages are ripe. The parties

---

[6] *See Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004) (courts must raise subject matter jurisdiction sua sponte); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

19

disagreed on the answer. The present record, however, is not sufficiently developed to permit an answer to those questions at this stage, particularly given that the parties did not explore the issue in the trial court. The parties should have the opportunity to fully address ripeness questions now that we have ordered the abatement lifted, and the trial court should have the opportunity to rule on them. To the extent some or all claims or damages are ripe and subject matter jurisdiction exists, then Shulman has the right to a prompt ruling on his pending summary judgment motions, as discussed. The trial court will have the discretion to address any remaining discovery issues.

## Discovery order

Shulman asserts that the document requests at issue in Georgia's Motion to Compel, request numbers 8, 9, 23, and 24, seek documents protected by the attorney-client privilege. For example, request numbers 8 and 9 seek documents that define or describe "[Shulman's] scope [of] engagement" for legal services to other clients—GOB and Michael. Similarly, request numbers 23 and 24 seek communications between Shulman and these other clients. Shulman argues that he made a prima facie case by affidavit that the documents in question are privileged under Texas Rule of Evidence 503, which protects "communications made to facilitate the rendition of professional legal services to the client." Tex. R. Evid. 503. Shulman's affidavit states that the documents in questions are comprised of legal invoices to GOB and/or Michael and draft agreements for Gulfstream Trading, Ltd., that these documents were part of the client files for those persons or entities,

20

and that he has never received consent to waive the attorney-client privilege as to these documents.

If the party asserting the privilege establishes a prima facie case for the privilege and "tenders documents to the trial court, the trial court must conduct an *in camera* inspection of those documents before deciding to compel production." *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016). "A trial court abuses its discretion when it fails to conduct an adequate *in camera* inspection of documents when such review is critical to evaluation of a privilege claim." *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 261 (Tex. 2005) (orig. proceeding).

At the hearing on the motion to reconsider, Shulman tendered the documents in question for *in camera* review. The trial court declined to review the documents at that time not because Shulman failed to establish a prima facie case of privilege, but because Shulman did not prove that Shulman's client, Michael, wanted to invoke the attorney-client privilege. The trial court instructed Shulman's counsel to determine whether Michael wanted to invoke the privilege. The trial court did not decline to conduct an *in camera* review if later presented with evidence that Michael desired to assert his privilege.

"A party's right to mandamus relief generally requires a predicate request for some action and a refusal of that request." *In re Perritt*, 992 S.W.2d 444, 446 (Tex. 1999) (orig. proceeding); *In re Le*, 335 S.W.3d 808, 814–15 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding). Shulman is not entitled to mandamus relief as to the order to produce documents and his request for *in camera* review because the trial court has not finally refused that request, but indicated a willingness to review

21

the documents if Shulman presents evidence that Michael wants to invoke his privilege.

## CONCLUSION

For the above reasons, we conditionally grant the petition for writ of mandamus, in part, as to the abatement order and direct the trial court to vacate that order. We deny the petition, in part, as to the order that Shulman produce documents. We are confident the trial court will act in accordance with this opinion. The writ of mandamus shall issue only if the trial court fails to do so.


/s/    Kevin Jewell
Justice


Panel consists of Justices Boyce, Donovan, and Jewell.