

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00094-CV

———————————————

MCMC Auto Ltd., Appellant

v.

Sidecars, Inc., Appellee

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-285175-16

Before Sudderth C.J.; Walker and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth
Dissenting Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

## I. Introduction

In three issues, Appellant MCMC Auto Ltd. challenges the trial court's order granting Appellee SideCars, Inc.'s motion for summary judgment on limitations. Because we hold that the claims in MCMC's 2016 lawsuit accrued in 2010, and thus were barred by limitations, we affirm the trial court's summary-judgment order.

## II. Factual Background

According to its president Michael Thomasson, MCMC is the largest "buy here, pay here" car dealer in North Texas. MCMC sells cars to customers who have poor credit histories and who are not able to obtain financing from traditional lenders.

When MCMC sells a car on credit, it arranges a loan, and the car serves as collateral. To protect its interest in the collateral, MCMC requires the customer to obtain insurance naming MCMC as the loss payee. The customer may choose a company from which to obtain the insurance, but if the customer cannot find such a company, MCMC offers collateral protection coverage to the customer. In such an arrangement, the customer pays MCMC monthly premiums. MCMC hires a third-party administrator to run the collateral-protection-coverage program. The third-party administrator charges MCMC a fee based on a percentage of the premiums paid by customers and places the remainder of the premiums into a fiduciary account used to make repairs to the cars or to reimburse MCMC for loss or damage.

In 2010, SideCars proposed to administer MCMC's collateral-protection-coverage program for a lower fee than the company that was then running the program charged. According to Thomasson, SideCars represented to MCMC that it was legally authorized by the Texas Department of Insurance (the Department) to administer the program.

In February 2010, MCMC and SideCars signed a contract for SideCars to run the program, and SideCars began doing so shortly thereafter. In the contract, SideCars expressly warranted that its program did not violate state insurance and finance regulations and that MCMC's participation in the program would not constitute MCMC's "engaging in the unlawful transaction of the business of insurance as defined by state law."

The parties' contractual relationship was short-lived. In March 2010, the Department informed SideCars of the Department's position that SideCars's program constituted an unauthorized insurance practice by SideCars and by its "dealer-agents," including MCMC. The Department instructed SideCars to unwind the program and to return all premiums. SideCars made MCMC aware of the dispute between SideCars and the Department. According to SideCars's president Les Olson, by March 2010, MCMC knew that the Department had deemed SideCars to be engaging in an unauthorized insurance practice "and that the damage that would be suffered by any participant, including car dealers[,] would be the unwinding of the transaction."

Toward the end of March 2010, SideCars filed a declaratory-judgment lawsuit against the Department in Travis County and provided a copy of the petition to MCMC. In the petition, SideCars asserted that the Department was attempting to "put the SideCars . . . program out of business without the jurisdiction to do so." SideCars sought, among other relief, a declaration that the Department had no authority to regulate SideCars's program and an injunction preventing the Department from pursuing disciplinary proceedings against SideCars or "interfering in [any way] with [SideCars's collateral-protection-coverage] program." As a result of SideCars's act of providing a copy of its petition to MCMC, according to Olson, by March 2010 MCMC had "notice on two different occasions that [the Department] had deemed the SideCars program unauthorized insurance and that it was demanding the return of all premium[s]."

In August 2010, MCMC chose a different company to administer its program and terminated the agreement with SideCars. In October 2010, the Travis County trial court granted summary judgment for the Department, and the next month, that court issued a permanent injunction forbidding SideCars from conducting the collateral-protection-coverage program. MCMC became aware of the ruling against SideCars. SideCars appealed the Travis County trial court's judgment, but the Austin court of appeals affirmed the judgment in 2013. In 2014, the supreme court denied

4

SideCars's petition for review.[1] Olson has averred that he informed MCMC of all of these developments from 2010 until 2014 "as they occurred."

In June 2015, the Texas Office of Consumer Credit Commissioner (OCCC) sent a letter to MCMC. OCCC informed MCMC that SideCars's litigation against the Department had reached a conclusion in favor of the Department and expressed that the "premiums or fees paid by retail buyers in connection with" SideCars's program were unauthorized. OCCC asked MCMC to provide information about customers who had used SideCars's program. On September 14, 2015, OCCC sent another letter to MCMC instructing it to "provide restitution to all affected retail buyers" who had used the program.

In April 2016, MCMC sued SideCars for breach of contract, fraud, fraudulent inducement, fraud by nondisclosure, negligent misrepresentation, and violation of the Texas Insurance Code. MCMC specifically alleged that SideCars had misrepresented that its collateral-protection-coverage program was legal (or had failed to disclose that it was not legal), that SideCars had intended for MCMC to act on the misrepresentation, that MCMC had done so, and that MCMC's reliance on the misrepresentation had caused injury. SideCars filed an answer in which it pleaded several affirmative defenses, including limitations.

---

[1] *See SideCars, Inc. v. Tex. Dep't of Ins.*, No. 03-10-00720-CV, 2013 WL 2395189, at *6 (Tex. App.—Austin May 30, 2013, pet. denied) (mem. op.).

After MCMC filed its suit, in July 2016, OCCC sent a letter to MCMC summarizing pertinent events involving MCMC and SideCars during the previous six-year period. The letter stated in part,

> On September 17, 2010, [OCCC] completed an examination of the books and record[s] of MCMC and discovered that it had offered and sold [collateral protection coverage] . . . that was marketed through [SideCars].

> On October 1, 2010, [OCCC] sent a letter to [SideCars] advising [SideCars] . . . that restitution would be required because the program did not comply with Chapter 348 of the Texas Finance Code. As [SideCars] and [the Department] were already at the time involved in litigation over the legality of [SideCars's] program, it was determined that [OCCC] would refrain from initiating further action until the completion of the judicial process.

> . . . [In 2013, t]he Third Texas Court of Appeals held that [SideCars's] program was subject to the authority of [the Department] and constituted the unauthorized business of insurance. [SideCars] appealed the decision to the Supreme Court of Texas. In 2014, the Supreme Court of Texas denied the petition for review[,] thus upholding the Third Texas Court of Appeals['s] decision.

> In a letter dated September 14, 2015, MCMC was instructed to provide restitution for the unauthorized . . . premiums to the affected retail [buyers].

> For the past year, MCMC and [OCCC] have attempted to resolve this issue through informal negotiations. However, in a letter dated July 6, 2016, MCMC rejected [OCCC's] final settlement offer. Due to MCMC's rejection of the final settlement offer, the matter has been referred to our legal department for an enforcement action.

In October 2016, OCCC signed an "Order to Cease and Desist, and to Make Restitution." In the order, OCCC found that MCMC had "charged and received premiums for substitute insurance coverage that was not written by a company

6

authorized to do business in this state." OCCC ordered MCMC to provide restitution to affected retail buyers. In November 2016, through an agreed order, MCMC became obligated to pay $125,000 collectively to the affected buyers.

MCMC filed a motion for partial summary judgment on its breach-of-contract claim against SideCars. MCMC argued that its obligation to pay $125,000 in restitution was a "direct result of SideCars's decision to operate in violation of the Texas Insurance Code." SideCars filed a response arguing that limitations barred the claim. The trial court denied MCMC's motion.

Three months later, SideCars sought summary judgment on its affirmative defense of limitations. In its summary-judgment motion,[2] SideCars contended that limitations barred all of MCMC's claims. SideCars argued that MCMC learned of its legal injuries that it asserted against SideCars in 2010, that limitations began to run

---

[2]Although SideCars's motion for summary judgment is titled as a no-evidence motion and it recites a no-evidence summary-judgment standard, it is in substance a traditional motion, with summary-judgment evidence attached and argument that the defense of limitations had been established through the "undisputed summary[-]judgment evidence" and legal authority, rather than a want of evidence to support a particular claim. *See* Tex. R. Civ. P. 94 (classifying a statute-of-limitations plea as an affirmative defense); *Lindley v. McKnight*, 349 S.W.3d 113, 123–24 (Tex. App.—Fort Worth 2011, no pet.) (explaining the difference between traditional and no-evidence motions for summary judgment); *see also Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 679 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[A] party may never properly move for no-evidence summary judgment to prevail on its own . . . affirmative defense for which it has the burden of proof . . . .").

then, and that limitations therefore had expired by the time MCMC filed its petition against SideCars in 2016.

In MCMC's response to SideCars's summary-judgment motion,[3] it argued that SideCars's limitations argument sought to "penalize MCMC for prudently waiting for its claims to be fully ripe before filing suit." MCMC argued that limitations did not begin to run until September 2015 when OCCC first informed MCMC that it would be required to pay restitution to any buyer who participated in SideCars's program. MCMC contended that this date was the first occasion when MCMC knew that it had "suffered damages as a result of SideCars's breach." Alternatively, MCMC argued that limitations did not begin to run in 2010 because during SideCars's litigation with the Department that lasted through 2014, SideCars "repeatedly assured MCMC that its program was legal in an effort to prevent MCMC from filing suit" against SideCars.

The trial court granted SideCars's motion for summary judgment. The court dismissed all of MCMC's claims with prejudice, finding that the expiration of limitations periods barred the claims. MCMC then perfected this appeal.

---

[3]On the same day it filed its response, MCMC also filed its first amended petition in which it pleaded that the discovery rule and, alternatively, equitable estoppel applied to estop SideCars from asserting the affirmative defense of limitations.

8

### III. Summary Judgment Was Proper on
### SideCars's Affirmative Defense of Limitations

In its first and second issues, MCMC argues that summary judgment was improper on all of its claims. MCMC contends that SideCars was not entitled to summary judgment on its statute of limitations defense because SideCars had failed to (1) conclusively prove when MCMC's causes of action accrued and (2) conclusively negate the discovery rule pleaded by MCMC.

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 562 U.S. 1180 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

**B. Law on Limitations and Exceptions to Limitations**

A statute of limitations "restricts the period within which a party can assert a right." *Hunt Steed v. Steed*, 908 S.W.2d 581, 583 (Tex. App.—Fort Worth 1995, writ denied). A limitations period "compels a party to bring a cause of action within a reasonable time so the opposing party has a fair opportunity to defend it." *Id.* Claims for breach of contract and for fraud are subject to a four-year limitations period from the date the claims accrue. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (West 2002), § 16.051 (West 2015). Negligent misrepresentation claims and claims for violation of the Texas Insurance Code carry two-year limitations periods. *See* Tex. Ins. Code Ann. § 541.162(a) (West 2009); *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 217 (Tex. App.—Dallas 2013, no pet.).

For a limitations defense, a defendant must conclusively prove when each cause of action accrued. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). A cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). The general rule governing when a claim accrues, to start limitations running, is the "legal[-]injury rule," which provides that a claim accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*,

10

933 S.W.2d 1, 4 (Tex. 1996); *see also Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013, no pet.). "[T]he commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). A claim for breach of contract accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). The discovery rule defers accrual of a cause of action until a plaintiff knew or, through the exercise of reasonable care and diligence, should have known of the facts giving rise to the cause of action. *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). "The discovery rule, in application, proves to be a limited exception to statutes of limitations," *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (op. on reh'g), and is generally limited to situations in which "the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (quoting *Altai*, 918 S.W.2d at 456). An injury is "inherently undiscoverable" if it "is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). An injury is "objectively verifiable" if the presence of injury and the producing wrongful act cannot be disputed and if the facts upon which liability is asserted are

11

demonstrated by direct, physical evidence. *See S.V.*, 933 S.W.2d at 7. The discovery

rule, as summarized by the Texas Supreme Court,

> does not linger until a claimant learns of actual causes and possible cures. Instead, it tolls limitations only until a claimant learns of a wrongful injury. Thereafter, the limitations clock is running, even if the claimant does not yet know[]

- the specific cause of the injury;

- the party responsible for it;

- the full extent of it; or

- the chances of avoiding it.

*PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93–94 (Tex.

2004) (internal citations omitted).

To invoke equitable estoppel in response to a motion for summary judgment

on limitations grounds, the nonmovant must raise a fact issue that shows the

following: (1) a false representation or concealment of material facts; (2) made with

knowledge, actual or constructive, of those facts; (3) with the intention that it should

be acted on; (4) to a party without knowledge or means of obtaining knowledge of the

facts; (5) who detrimentally relies on the representations. *Johnson & Higgins of Tex., Inc.*

*v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998) (op. on reh'g); *Forrest v.*

*Vital Earth Res.*, 120 S.W.3d 480, 486–87 (Tex. App.—Texarkana 2003, pet. denied).

When equitable estoppel is alleged in avoidance of a limitations defense, the failure to

file suit must be "unmixed" with any want of diligence on the plaintiff's part. *Leonard*

*v. Eskew*, 731 S.W.2d 124, 129 (Tex. App.—Austin 1987, writ ref'd n.r.e.) (op. on reh'g). Estoppel in avoidance of limitations may be invoked in two ways: either a potential defendant conceals facts that are necessary for the plaintiff to know he has a cause of action, or the defendant engages in conduct that induces the plaintiff to forego a timely suit regarding a cause of action that the plaintiff knew existed. *Rendon v. Roman Catholic Diocese of Amarillo*, 60 S.W.3d 389, 391 (Tex. App.—Amarillo 2001, pet. denied).

## C. Analysis

### 1. SideCars Conclusively Proved the Accrual Date[4]

SideCars's summary-judgment evidence established that from March 2010 through November 2010, MCMC was put on notice that SideCars was engaging in the unauthorized business of insurance in Texas and that all transactions were required to be reversed. As early as March 2010, MCMC knew that the Department had concluded that SideCars and its dealer-agents were engaging in the unauthorized business of insurance in Texas and that the Department had ordered SideCars to provide written confirmation that it had ceased marketing and collecting premiums, as well as to provide the total amount of premiums previously collected so that such transactions could be reversed in order "to windup the affairs of the company in

---

[4]MCMC argues that SideCars's summary-judgment motion addressed only MCMC's breach-of-contract claim. SideCars's summary-judgment motion, however, specifically states, "All of MCMC's claims are barred by the applicable two[-] or four-year statute of limitations."

Texas." By October 2010, MCMC knew that the Travis County court handling SideCars's declaratory-judgment suit had, by virtue of the trial court's granting of SideCars's motion for summary judgment, ruled SideCars's program constituted engaging in the unauthorized business of insurance. And the following month, in November 2010, MCMC knew that the Travis County court had signed an order permanently enjoining SideCars from selling insurance in Texas. Also by this time, MCMC had ceased doing business with SideCars. Thus, SideCars's summary-judgment evidence proving these facts established that all of MCMC's causes of action accrued no later than November 2010—when the contract was breached because SideCars could no longer warrant that its program did not violate state insurance regulations. *See Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 846; *Tucker v. Bedgood*, No. 13-16-00433-CV, 2016 WL 7011584, at *7 (Tex. App.—Corpus Christi Dec. 1, 2016, no pet.) (mem. op.) (holding that appellees conclusively proved that appellant's breach-of-contract claim accrued in 2008 at the latest).

Despite SideCars's uncontroverted summary-judgment evidence, MCMC argues that its claims against SideCars were not ripe,[5] and therefore did not accrue, in 2010 because MCMC did not "actually suffer damage as a result [of SideCars's breach] until September 14, 2015"—when OCCC ordered MCMC to pay restitution. MCMC

---

[5]A case is not yet ripe if the facts are not sufficiently developed and if the resolution of the case depends on contingent or hypothetical facts. *Waco ISD v. Gibson*, 22 S.W.3d 849, 851–52 (Tex. 2000); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998).

relies on a mandamus case involving a potential claim for attorney malpractice and a plea-to-the-jurisdiction case involving potential claims if the city's permit application for a landfill received regulatory approval. *See In re Shulman*, 544 S.W.3d 861, 864 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding); *City of Anson v. Harper*, 216 S.W.3d 384, 390–91 (Tex. App.—Eastland 2006, no pet.).[6] To the extent those cases hold that the claims involved were not ripe,[7] they are distinguishable from the present case because the injury here was not contingent upon a future event. Here, the legal injury at issue occurred in 2010 when SideCars's program was deemed unauthorized

---

[6]To the extent that MCMC's reference to these two cases could be interpreted as arguing for the *Hughes* tolling rule to be applied to this case, MCMC makes clear in its reply brief that it is not seeking to have limitations tolled, stating, "Tolling is not the issue. . . . Tolling is only an issue if the cause of action has already accrued." Moreover, based on our analysis, this case is not one that falls within the narrow parameters of the *Hughes* rule, and we decline to broaden that narrow exception to the limitations defense, especially when such relief was not pleaded or requested by MCMC.

[7]MCMC states in its brief that the *Shulman* court "ruled that [the client's] claims were not ripe." Although the *Shulman* court intimated that some of the client's claims might not be ripe, it held that the mandamus record was not sufficiently developed to determine questions of ripeness but that

> [t]he parties should have the opportunity to fully address ripeness questions now that we have ordered the abatement lifted, and the trial court should have the opportunity to rule on them. To the extent some or all claims or damages are ripe and subject[-]matter jurisdiction exists, then Shulman has the right to a prompt ruling on his pending summary[-]judgment motions[.]

544 S.W.3d at 873.

15

and was ordered to cease operations.[8]  Additionally, MCMC's argument that its claims were not ripe until it was assessed damages in the restitution order ignores established case law providing that a claim for breach of contract accrues when the contract is breached and that a breach occurs when a party fails or refuses to do something it has promised to do.  *See Stine*, 80 S.W.3d at 592; *Santander Consumer USA, Inc. v. Palisades Collection, LLC*, 447 S.W.3d 902, 906 (Tex. App.—Dallas 2014, pet. denied).  MCMC's argument also ignores that under the legal-injury rule, a claim accrues when a wrongful act causes some legal injury, even if all resulting damages have not yet occurred.  *See S.V.*, 933 S.W.2d at 4.  Accordingly, MCMC's ripeness argument is without merit.  *See Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 73 (Tex. App.—Texarkana 2004, pets. denied) (holding that sufficient evidence supported "the jury's determination that PWW knew or should have known by January 1, 1998, that UPRC had damaged the well and thus interfered with its contract.  The fact that the extent of the damages . . . did not become apparent until it was sued by the Burkes does not toll the statute of limitations").

Applying the four-year statute of limitations to November 2010—the accrual date conclusively established by SideCars—MCMC's breach-of-contract claim was

---

[8]If MCMC was concerned about the correctness or viability of the Department's ruling, MCMC could have filed its own suit for declaratory judgment, which is a judicial remedy.  *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357–58 (Tex. 2000) (determining that City had an available judicial remedy—to bring a declaratory-judgment action).

barred after November 2014, absent an applicable doctrine that tolled the running of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(1), (4).

## 2. SideCars Conclusively Negated Application of the Discovery Rule

Because MCMC pleaded the discovery rule, we turn next to whether SideCars negated application of the discovery rule to toll the running of the limitations period on MCMC's claims. SideCars relied on uncontroverted statements from Olson's affidavit that SideCars had provided MCMC a copy of the Department's March 24, 2010 letter and the orders signed in SideCars's Travis County suit—all of which showed that SideCars's program had been deemed unauthorized insurance in 2010. SideCars also relied on the uncontroverted statement in Olson's affidavit that MCMC had stopped self-insuring with SideCars in August 2010 because MCMC believed that SideCars's program had been deemed unauthorized insurance. We conclude that SideCars's summary-judgment evidence conclusively established that MCMC had sufficient facts to know that it had a cause of action against SideCars for breach of contract by November 2010, at the latest. *See B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 54 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that discovery rule did not operate to defer accrual of claims because they were actually discovered, at the latest, by January 2008 and thus discovery rule did not make timely appellant's claims that were filed in October 2012); *Canada v. Canada*, No. 02-11-00483-CV, 2013 WL 1759894, at *5 (Tex. App.—Fort Worth Apr. 25, 2013, no pet.) (mem. op.) (holding that appellee conclusively negated discovery rule because

appellant's own testimony showed that she knew of claims in 2002 but did not investigate those claims until 2010 and did not file suit until 2011).  SideCars has proven as a matter of law that there is no genuine issue of material fact about when MCMC discovered the nature of the injury because it was not "inherently undiscoverable," thus negating the discovery rule.  *See Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011) (stating that the discovery rule applies "only when the nature of the plaintiff's injury is *both* inherently undiscoverable and objectively verifiable") (emphasis added); *Lerner v. First Commerce Bank*, 302 S.W.3d 16, 18 n.1 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that bank negated the discovery rule's applicability and established accrual date of appellant's claim by presenting summary-judgment evidence that appellant knew of bank's refusal to honor the check, and therefore the accrual of his claim, on or before October 20, 1980).  The burden then shifted to MCMC to present controverting evidence regarding how its injury was inherently undiscoverable.

In its response to SideCars's motion for summary judgment,[9] MCMC, without citing to any summary-judgment evidence, argued only that "the circumstances

[9]Based on MCMC's brief and reply brief, it appears that MCMC relies solely on its ripeness challenge to defeat SideCars's limitations defense.  Because we are required to indulge every reasonable inference in the nonmovant's favor, *see 20801, Inc.*, 249 S.W.3d at 399, and because we consider the material on file with the trial court as of the time the summary judgment was granted, *see Brookshire v. Longhorn Chevrolet Co.*, 788 S.W.2d 209, 213 (Tex. App.—Fort Worth 1990, no writ), we review the arguments raised and the evidence cited in MCMC's response.

demonstrate MCMC's injuries are inherently undiscoverable" and that it "did not know that the representations SideCars made regarding the legality of its program were false . . . until the Third Court of Appeals entered its ruling." MCMC's summary-judgment evidence demonstrates that it terminated the agreement with SideCars in August 2010 and moved all of its customers covered by SideCars's program to a new insurer but that it "refrained from filing suit against SideCars until after [OCCC] ordered MCMC to pay restitution." Even after considering the evidence presented in the light most favorable to MCMC as the nonmovant, MCMC's evidence does not create a fact issue about when the injury or breach occurred. MCMC's evidence instead supports the conclusion that the breach occurred in 2010 and that MCMC failed to file suit before the limitations period had expired.

### 3. SideCars Conclusively Negated Application of Equitable Estoppel

Because MCMC also pleaded equitable estoppel, we analyze whether SideCars negated the application of equitable estoppel to MCMC's claims. As set forth above, in order to trigger the application of equitable estoppel, there must be a false representation or concealment of material facts that is made to a party without knowledge or means of obtaining knowledge of the facts who detrimentally relies on the representations. SideCars's summary-judgment evidence conclusively proved that there was no concealment regarding the Department's determination that the program constituted unauthorized insurance and that MCMC had knowledge of this as shown by Olson's affidavit, which stated that SideCars gave MCMC notice of the

19

unauthorized nature of its program multiple times in 2010. SideCars also conclusively proved that MCMC did not detrimentally rely on any representation from SideCars because MCMC ceased doing business with SideCars in August 2010. SideCars thus conclusively negated the fourth and fifth elements of equitable estoppel. The burden then shifted to MCMC to present controverting evidence regarding the elements of equitable estoppel.

In its response to SideCars's summary-judgment motion, MCMC failed to rebut SideCars's summary-judgment evidence detailing that SideCars sent MCMC multiple documents in 2010 showing that SideCars's program had been deemed unauthorized insurance. MCMC also failed to rebut SideCars's summary-judgment evidence showing that MCMC ceased doing business with SideCars in August 2010 and therefore did not detrimentally rely on SideCars's representations about whether its program was authorized. MCMC thus failed to raise a fact issue regarding its equitable estoppel defense. *See City of Houston v. McDonald*, 946 S.W.2d 419, 422 (Tex. App.—Houston [14th Dist.] 1997, writ denied) (affirming summary judgment because no evidence showed false representation or concealment of material facts to support equitable estoppel).[10]

---

[10]Additionally, as stated in this court's recent opinion in *Woods v. Soules*,

[w]e have not located . . . a case holding that a genuine issue of material fact existed concerning the fourth and fifth elements of the equitable-estoppel defense to avoid application of the statute of limitations when

20

## 4. Outcome

Considering the evidence presented in the light most favorable to MCMC as the nonmovant, crediting evidence favorable to MCMC if reasonable jurors could, and disregarding evidence contrary to MCMC unless reasonable jurors could not, SideCars established as a matter of law that (1) MCMC suffered a legal injury in 2010 when SideCars breached the agreement, (2) the discovery rule does not apply to toll the limitations period because the breach was not inherently undiscoverable, and (3) equitable estoppel does not apply to toll the limitations period because MCMC had knowledge of the unauthorized nature of SideCars's program in 2010 and ceased doing business with SideCars in August 2010. Because MCMC did not bring its claims against SideCars for almost six years after the claims accrued in 2010, all of MCMC's claims are barred by limitations. We therefore hold that the trial court did not err by granting summary judgment in SideCars's favor, and we overrule MCMC's first and second issues.[11]

---

the "party without knowledge or means of [obtaining] knowledge of the facts" was a party represented by counsel.

No. 02-17-00336-CV, 2018 WL 2248488, at *2 (Tex. App.—Fort Worth May 17, 2018, pet. filed) (mem. op.).

[11]In its third issue, MCMC states that "[u]pon reversing the trial court's judgment, this Court must render the judgment the trial court should have rendered" and urges this court to render a partial summary judgment for MCMC on its breach-of-contract claim. Because we are affirming the trial court's summary-judgment order, MCMC's third issue is moot.

## IV.  Conclusion

Having overruled MCMC's dispositive first and second issues, we affirm the trial court's summary-judgment order.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  October 25, 2018